UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.: 04-10274-PBS |
| | ) | |
| TONY DIAZ, | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant United States Attorney Paul R. Moore, hereby respectfully submits this Memorandum in opposition to defendant TONY DIAZ's Motion to Suppress, filed with this Court on March 3, 2005.

**Summary**

**1. The Defendant's Arguments for Suppression of Firearm and Statements.**

Defendant DIAZ argues that the firearm and ammunition found in his car should be suppressed because the search of the car was not incident to an arrest. The defendant concedes that police may have had several grounds for reasonable suspicion for a *Terry* stop and probable cause for an arrest but questions the timing and availability of the relevant information and disputes the accuracy of the police reports. The defendant is also seeking to suppress statements he made subsequent to his arrest concerning the firearm.

**2. The Government's Response to Defendant's Arguments for Suppression.**

The government believes that the police had a reasonable, articulable suspicion that the person driving the defendant's car (the defendant) was armed and dangerous and had just

committed attempted murder with a firearm. Having stopped a vehicle matching the description given to them by the police dispatcher in the area near where the incident had occurred and very proximate to the time when it had occurred, the police initiated a stop of the defendant's vehicle. Having stopped the vehicle and asked the defendant to exit the vehicle, officers conducted a permissible pat-down frisk of the defendant. When police officers did not find a gun on DIAZ's person through the frisk, they were entitled to search the vehicle for evidence of criminal activity. *See Pennsylvania v. Labron*, 518 U.S. 938 (1996). In searching the car, a loaded firearm was found in an open, un-enclosed area (under the front passenger seat). Subsequently, one of the intended victims then positively identified the defendant as the shooter (this occurred after the stop by police of DIAZ). DIAZ was then arrested and taken into custody. Thus, the search of the vehicle and subsequent seizure of the firearm and ammunition were reasonable and valid under the Fourth Amendment.

The defendant's statements to police regarding his acquisition of the firearm and lack of a license for it were made after his lawful arrest. Before making the statements, the defendant had been advised of his *Miranda* rights in his native tongue (Spanish) and had signed a waiver indicating he fully understood those rights. The defendant's Motion to Suppress does not argue that these statements were involuntary. Therefore, with regard to the suppression of those statements, there is no stated basis on which to suppress those statements.

### Statement of Relevant Facts[1]

On July 14, 2004, several units of the Lawrence Police Department responded to a report that shots had been fired near the L.A.W. Grill in Lawrence, Massachusetts (located near the

---

[1] The government anticipates that the testimony given by police officers at the Hearing in this matter, currently scheduled for March 28, 2005, will support the facts asserted herein.

intersection of Amesbury and Canal). Two individuals (brothers Henry and Edison Gonzalez) had driven to the police station and reported that shots had just been fired at them at the Grill. They stated that the shooter was driving a blue BMW and had been following them until he saw them approach the police station. Police interviewed the apparent victims in order to gain further details about the shooting and the shooter. Both Edison and Henry Gonzalez told police that they had been shot at as they attempted to drive out of the Grill's parking lot. While Henry (visiting from New York City) had not previously been acquainted with the shooter, Edison and another brother, Edward, were familiar with him, although they did not know him by name. Edison Gonzalez told the police that he knew where the shooter lived and that he knew the shooter's girlfriend and where she lived. Edison also revealed that the shooter and his other brother (Edward) had previously had a heated argument over an unidentified female.

     Sgt. Carroll and Det. Burokas then took Edison Gonzalez in an unmarked patrol car to near where Edison said the shooter lived. At about this time, dispatch provided further information about the BMW, informing law enforcement that it was blue in color, bearing Massachusetts license plate number "3703ZE." Once at the place where Edison Gonzalez said the shooter lived, police saw no indication of the shooter's presence (no car or other indicia of his presence). Police in the unmarked car then headed to the place where the victim indicated that the shooter's girlfriend resided.

     At this point, Officer Nigosian got on the radio saying that he observed a blue BMW matching the description of the shooter's vehicle and license number, was following it, and called for backup units. As back-up units arrived, the police pulled over the car. Two officers approached the vehicle and could see that one individual matching the description of the shooter

provided by the victims was alone in the car. At the instruction of the officers, the defendant got out of the vehicle and was placed in handcuffs for the officers' safety. The officers had valid security concerns given that they reasonably suspected the occupant of the vehicle to have shot at the Gonzalez brothers, with a firearm, at some time within the preceding twenty minutes.

The officers then conducted a permissible pat-down frisk of DIAZ when he stepped out of the vehicle. Having probable cause to believe that DIAZ had been in possession of a gun (and not having found the gun on DIAZ's person), the police searched the vehicle for evidence of criminal activity (the firearm). During this search, one of the officers found a loaded .45 caliber handgun in an open, un-enclosed area (under the front passenger seat).

Upon hearing over the radio that Officer Nigosian had observed the blue BMW, police in the unmarked car carrying Edison Gonzalez went to the location where the car was being pulled over. Police on the scene placed the suspect on the sidewalk so that he could be seen by Edison, inside the unmarked car behind heavily-tinted windows. Edison then quickly and unequivocally identified the defendant as the person who had just attempted to shoot at him and his brother. Based on this positive identification the defendant was arrested and taken into custody. Subsequently, Henry and Edward Gonzalez also identified the defendant as the shooter on a non-suggestive photo lineup with eight other photographs.

Once the defendant was in custody, one officer read him his *Miranda* rights in Spanish in the presence of two other detectives. The defendant stated that he understood his rights and then signed the *Miranda* waiver. The defendant then stated that he did not have a license for the handgun and that he had bought it off the street for $300.

**Argument**

1.      **Police Had a Reasonable, Articulable Suspicion of Criminal Activity**

Law enforcement officers may permissibly initiate an investigatory detention if they can point to specific and articulable facts that, together with rational inferences drawn from those facts, reasonably suggest that criminal activity has occurred. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see also U.S. v. Arvizu*, 534 U.S. 266, 275-77 (2002); *U.S. v. Cortez*, 449 U.S. 411, 417-18 (1981). In this case, the police officers that pulled over the defendant had a reasonable suspicion that the man driving the car had just committed attempted murder with a handgun. Based on information provided by the Gonzalez brothers, police knew the location of the incident that occurred just minutes before and they knew that the suspect was traveling alone in a blue BMW. The First Circuit has held that reliable information from a citizen informant can create the reasonable suspicion necessary to justify an investigative detention. *See. U.S. v. Taylor*, 162 F.3d 12, 19-20 (1st Cir. 1998). In addition, the police report notes that the specific license plate number of the shooter's vehicle was given out by the dispatcher before the Defendant was detained by police. The totality of the circumstances provided a more than sufficient basis to support a reasonable, articulable suspicion that the person in the vehicle had just committed a crime.

2.      **Police were entitled to make a Protective Search for Weapons**

A police officer who makes an investigatory detention may conduct a limited protective search for weapons. This limited search may include the passenger compartment of a vehicle when officers reasonably believe the suspect is dangerous. In *Michigan v. Long*, the Supreme Court held that a search of an automobile passenger compartment did not exceed the scope of

5

*Terry* because it was limited to areas where a weapon could be place or hidden and police reasonably believed the suspect to be dangerous. 463 U.S. 1032, 1049-50 (1983).

In this case, because the occupant of the car was suspected of committing attempted murder with a firearm just minutes earlier, the police reasonably believed him to be dangerous. The gun was then found in an un-enclosed area beneath the front passenger seat. The police were entitled to search the passenger compartment of the BMW because they had reason to believe the suspect was dangerous.

### 3. Police had Probable Cause to Believe the Vehicle Contained Evidence of Criminal Activity

The Fourth Amendment does not require that police obtain a warrant to search an automobile when they have probable cause to believe it contains evidence of criminal activity. *See U.S. v. Ross*, 456 U.S. 798, 804-809 (1982). This exception to the warrant requirement stems from both the inherent mobility of vehicles and the reduced expectation of privacy. *See Pennsylvania v. Labron*, 518 U.S. 938 (1996) and *New York v. Class*, 475 U.S. 106, 112-13 (1986).

The Supreme Court defines probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). In this case, there was a fair probability that evidence of the shooting, namely the gun, would be found in the defendant's vehicle. Police officers knew that a shooting had occurred at a relatively nearby location. They also knew that witnesses had described the suspect as a man driving a blue BMW. Furthermore, the license number of the shooter's vehicle had been broadcast over the radio by the dispatcher. Once they had the driver of this vehicle detained, the officers conducted a pat-down frisk for weapons. After failing to find the gun used

in the shooting on the defendant's person, the officers knew that it was very likely that the gun was still in the car. Therefore, the circumstances of the situation provided probable cause to believe that evidence of criminal activity would be found in the vehicle.

### 4. Search of the Vehicle was Incident to an Arrest

Warrantless searches of arrestees are valid when conducted incident to a lawful custodial arrest. *See New York v. Belton*, 453 U.S. 454, 461 (1981). The defendant argues that the search in this case was not incident to arrest because the defendant was only handcuffed for the officer's safety and not formally arrested until after search was made. However, searches conducted immediately *before* formal arrest are valid searches incident to arrest if probable cause to arrest existed prior to the search. *See Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980).

In this case, police had reliable information from a witness that the suspect was a male driving a blue BMW. In addition, police knew the location of the shooting and also knew that the suspect had followed the victims to the police station in his car. The incident had occurred just minutes before. Therefore, the police had a pretty good idea of the location where the suspect might be found, as indeed he was found. In addition, the dispatcher had given the license plate number of the suspect's vehicle out before the defendant was detained. Given that the defendant and his car matched the exact description of the suspect, the police had probable cause to make an arrest even before the gun was found.

In addition, even though the officers did not say that the defendant was under arrest when they first placed him in handcuffs, the court may interpret this as an arrest. When police make a valid arrest of the occupant of a vehicle, they may search the passenger compartment even after they have exclusive control of the vehicle. *See New York v. Belton*, 453 U.S. 454, 462 (1981).

Therefore, if the defendant was under arrest when the handcuffs were first placed on him, the search was valid.

The defendant's argument as to the timing of the arrest is therefore completely irrelevant. If the police had probable cause to make the arrest, the search was justified whether it occurred before or after the arrest.

**5.  Police had Probable Cause to Arrest the Defendant**

Probable cause to conduct a warrantless arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested.  See *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Facts supporting probable cause may come from several sources.  Probable cause may be based upon information from a reliable, known informant.  See *Draper v. U.S.*, 358 U.S. 307, 313 (1959); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Also, weapons or other evidence seized during stops based upon reasonable suspicion may provide probable cause (*see U.S. v. Sharpe*, 470 U.S. 675, 683 (1985)), as may evidence discovered in plain view (*See Horton v. California*, 496 U.S. 128, 142 (1990)).

In this case, there were more than enough facts known to the police officers on which to base probable cause.  Not only did the suspect's car match the description given by the victims immediately after the crime, but the victims also made a positive identification of the defendant before he was taken into custody.  In addition, the handgun found in the defendant's car matched the description of the weapon used in the crime that had occurred just minutes before. Therefore, this was a valid, warrantless arrest based on probable cause.

**Other Issues**

The defendant states in his Motion that he does not agree with the accuracy of the police reports. However, the reports filed by Lawrence police officers are consistent with each other and with the evidence. It is the government's position that the credibility of witnesses is a matter for the Court's consideration during any Suppression Hearing as well as for the trier of fact at trial.

**Conclusion**

The defendant's sole argument seems to be that the search of the vehicle was unlawful because it was not incident to an arrest. Although the officers did appear to have probable cause to arrest the defendant before the search (making it a valid search incident to arrest), even if they did not the search was justified as a limited protective search for weapons and because there was probable cause to believe the vehicle contained evidence of criminal activity. In addition, there was probable cause to make the arrest given the positive identification by the victim and the gun found in the car.

Based on the foregoing, the defendant's Motion to Suppress (the firearm and statements of the defendant) should be denied.

                                          Respectfully submitted,

                                          MICHAEL J. SULLIVAN
                                          United States Attorney

                            By:    s/s Paul R. Moore
                                  Paul R. Moore
                                  Assistant United States Attorney

Date: March 15, 2005

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing pleading was served on March 15, 2005, via first class mail, to counsel for the defendant, Michael J. Liston, 2 Park Plaza, Suite 610, Boston, Massachusetts, 02116.

                                            s/s Paul R. Moore
                                            Paul R. Moore
                                            Assistant United States Attorney

March 15, 2005
Date