UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10274-PBS |
| | ) | |
| | ) | |
| TONY DIAZ, | ) | |
| a/k/a Jose A. Rivera, Jr., | ) | |
| a/k/a Santo Romero Villar, | ) | |
| a/ka/ Jose Rivera Morales, | ) | |
| a/k/a Jose Antoni Morales, | ) | |
| a/k/a Santo Rodolfo Romero Villar, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SUMMARY OF EVIDENCE IN SUPPORT
OF ARMED CAREER CRIMINAL SENTENCING POSITION**

The United States of America, by and through its attorneys, United States Attorney

Michael J. Sullivan and Assistant United States Attorney Paul R. Moore, hereby offers the

following documents (all of which documents were previously provided to both United States

Probation and to defense counsel in April of 2006) in an effort to demonstrate, by a

preponderance of the evidence, that the defendant is an Armed Career Criminal (as found by the

PreSentence Report) and subject to the statutory minimums associated with that provision of

law,[1] pursuant to Title 18, United States Code, Section 924(e) and the United States Sentencing

Guidelines, Section 4B1.4.

---

[1]Counsel and the Probation Office were provided with *all* of the documents contained herein prior to the previous sentencing hearing. Many of the documents were already contained within the Alien File, which had been provided to counsel well before the trial in this matter. Very few of these documents were obtained after the trial and each of those documents were provided by messenger to counsel within hours after being obtained by the undersigned. Records of the timing of the provision of all documents to counsel and the probation office are available upon direction or request of the court.

The government believes that it is unnecessary for it to call a police witness to testify at the hearing regarding the shooting which had occurred at the bar in Lawrence where this incident originated. Quite simply, the sworn testimony before this court of four Lawrence Police officers on March 28, 2005, makes clear the record regarding the defendant's involvement in the incident which preceded his arrest. In an abundance of caution, the government attempted to avoid any potential issue for appeal on the grounds of unfair prejudice by not attempting to introduce this particular evidence at trial - which was, arguably, not relevant. A copy of the grand jury testimony of one of the intended victims is included herein (Exhibit 1), as is a full copy of the Suppression Hearing transcript (Exhibit 25).

## PREVIOUS SENTENCING HEARING

The sentencing hearing currently scheduled for May 30, 2006 will be the second hearing in this matter. At the first hearing, which began on April 13, 2006 at approximately 3:15 p.m. and proceeded for about half an hour, the court observed that the organization of the government's evidence as then presented did not sufficiently distill the government's evidence such that the court could make its findings during the scheduled time (then less than forty-five minutes).

Counsel for the defendant stated to the court that the government should not be allowed additional time to "prepare" and that the government had failed to gather the requisite evidence relating to the defendant's lengthy criminal history.

The undersigned takes great exception to that statement by defendant's counsel. Counsel's client, the convicted defendant, has a very lengthy criminal history and the records are not easily ascertained. They are to be found under various aliases and contain court records from

2

a multitude of jurisdictions (diligent representation of counsel's client need not involve inaccurate assertions regarding the existence of the government's evidence, which existence was then well known to counsel).

Counsel made a factual error in his exceptional statement that the government had not collected the evidence tending to show the criminal history of his client (by a preponderance) and that it should not be allowed additional time for the purpose of another sentencing hearing. That assertion amounted to a clear misstatement of the facts at the time of that hearing. Rather, the then present organization of the evidence did not avail itself to a one-hour examination by the court. For not then offering a clearer written summation of the evidence relating to the defendant's criminal history, the undersigned apologizes to the court.

Beyond this, the documents contained herein were made available (by messenger) to counsel for the convicted and the Probation Officer prior to the last hearing. In point of fact, the vast majority of the relevant documents (presented and discussed herein) were part of the Alien File or another part of discovery (pre-trial) and were provided long ago to this counsel and his predecessor counsel (Michael J. Liston, Esq.).

Counsel further asserted at the previous sentencing hearing that the government had failed in persuading the jury that the defendant was a "felon" in possession of a firearm and suggested that the evidence which the government was then presenting (at the sentencing hearing) was the same as that presented to the jury - and which the jury had found to be insufficient (Count One - Felon in Possession of a Firearm and Ammunition). To be charitable, counsel was well aware that such an assertion was flawed. The government was severely constrained in its presentation of evidence at trial which would have otherwise very directly

connected the defendant to at least one of his several felony convictions.[2]

The government reserves the right to supplement, modify, or withdraw from this presentation of evidence. Presumably, the parties all favor the greatest possible collection of relevant criminal records in order to shed accurate light on the criminal history of the convicted defendant in the above-captioned matter.

Federal law is unclear in terms of the precise placement of burden when it comes to challenging the findings of the Probation Office's presentation in its PreSentence Report. Often, the moving party attempts to present more than generic argument for its opposition to specific findings of the PreSentence Report. *In the current matter, not so.* Rather, Defendant has objected - quite generally and without specific allegations - to the findings of the Probation Office. In so doing, Defendant has attempted to shift the entire burden to the government for proving the defendant's entire criminal record.

In this matter, the government has and will continue to gather any and all relevant evidence to shed the greatest possible light on the relevance of the criminal record which the Probation Office and the government believe to reflect the substantial unlawful activities of the defendant during his nearly twenty years in the United States.

## **EXHIBITS**

I.    **Documents and Sworn Testimony Relating to the Defendant's Attempted Murder of one or more Individuals** (defendant's use of the firearm at the LAW Grill in Lawrence, MA.)

1 - Grand Jury Testimony of Intended Victim (Henry Gonzalez) (September 1, 2004)

2 - Incident Report, Lawrence Police Dept. (July 14, 2004)

---

[2]See Exh. 27 for a view of the <u>entirety</u> of evidence allowed to be presented at trial to the jury regarding the defendant's extensive criminal record as a felon.

3 - Supplemental Report, Lawrence Police Dept. (July 16, 2004)

4 - Photo Array Identifications (by Henry and Edward Gonzalez)

5 - Transcript of 911 Call and Related Police Radio Traffic (as admitted at the

      Suppression Hearing) (6 pages)

6 - Identification Documents (at arrest, in name "Jose A. Rivera") (Social Security

      Account card, Mass. driver's license, Sovereign bank card)

7 - Certificate of Vehicle Registration (in name of "Jose A. Rivera")

**II.** **Documents Supporting Conviction of "SANTO ROMERO" at PSR** (*revised*)
**Paragraph 42** (Docket No. 076210-211 in Suffolk Superior Court)

8 - True Bill (Indictment of "SANTO ROMERO")

9 - Official Case Notes of Assistant Clerk of Suffolk Superior Court (5 pages including

guilty plea on June 5, 1990, and sentence to 4-6 years (June 5, 1990) at MCI Cedar Junction and

to Docket No. 076210

10 - Intake Image of "Santo Romero" at MCI Cedar Junction on June 7, 1990 (references

inmate number "W-48544")

11 - Affidavit of INS Special Agent George Dorsett (dated June 20, 1990) (references

admission, alien number, names and location of prisoner - MCI Concord) ("Santo Romero")

12 - INS Record of Deportable Alien (dated June 12, 1990) (references inmate number

W-48544, name(s), location (MCI Concord), conviction and sentence (4-6 years Cedar Junction

for Poss with Int to Dist.)

13 - Full Print Set obtained from "Santo Romero" at time of release from state to INS on

February 13, 1992 (referencing inmate number "W-48544").

14 - Photographic Image of "Santo Romero" (dated February 13, 1992) and bearing same

Alien Number as person interviewed by INS agent in MCI Concord

15 - INS Warrant of Deportation (dated March 7, 1992) (bearing signature "Santo Romero" and right thumb print which was found by the government's print expert to be identical to the right thumb print of the person printed by the Lawrence Police Department in July 2004)

**III.    Documents Supporting Conviction of "TONY DIAZ" at PSR** (*revised*) **Paragraph 45** (Docket No. 931090-002-004 in Middlesex Superior Court)

16 - Middlesex Superior Court - records relating to above docket no. and indicating guilty plea on April 27, 1998, to trafficking in 28 grams or more of cocaine (but less than 100) and a sentence for a term not exceeding 5 years and 1 day at MCI Cedar Junction (3rd page of conglomerate certified court records) (note references to previous Suffolk County convictions contained in Middlesex Indictment and to defendant being habed from MCI Concord)

**IV.    Documents Supporting Conviction of "JOSE ANTONIO RIVERA MORALES" at PSR** (*revised*) **Paragraph 46** (Docket No. 1995-00370-01 in Worcester Superior Court)

17 - Worcester Superior Court - records relating to above docket no. and indicating guilty plea on August 5, 1996, to distribution of a cocaine and a sentence for a term for not less than 2 years and not more than 4 years at MCI Cedar Junction (2nd page of conglomerate court records) (note sworn statement of defendant included in court records and which records indicate defendant's presence at MCI Concord on October 16, 1996) (note INS request served on MCI Concord relating to defendant bearing same Alien Number - and inmate number [W61076] on Bates Stamp no. 106-109)

18 - Inmate Photograph at MCI Shirley (dated December 18, 1996) with image of defendant and bearing identical inmate number (W61076)

19 - Inmate Card - Massachusetts Department of Correction - with image of defendant

6

and bearing identical inmate number (W61076)

20 - Inmate Facial Photographic Images (2) - Massachusetts Dept. of Correction - regarding inmate no. W61076 bearing the name "Jose Morales" released on May 25, 2001 (incarcerated at MCI Shirley)

21 - Certificate of Discharge - MCI Cedar Junction (dated May 25, 2001) with a written reference to inmate no. W61076 named "Jose Morales"

22 - Image of detainee / defendant at INS intake (dated May 25, 2001) and bearing reference to MCI Shirley as location of apprehension along with identical Alien Number and signature of defendant as "Santo Romero"

## V.    Other Relevant Documents

23 - Interstate Search of Criminal Records associated with FBI No. 573961KA1 (related to Alien Number of this defendant, as presented through DHS Keeper of Records testimony at trial)

24 - Application for Adjustment of Status in 1988 (application made by "Santo R. Romero" with a photographic image of the defendant and date of birth of "4/7/65" and bearing a full set of prints found by the government's print expert at trial to be identical with the full print set of the person taken into custody by the Lawrence Police Department on July 14, 2004)

25 - Dominican Passport (exact duplicate - original available upon request or direction of court) bearing image of defendant (admitted at trial) and bearing the name "Santo Rodolfo Romero Villar" and the date of birth of "7 April 1965"

26 - Suppression Hearing Transcript (March 28, 2005)

27 - Stipulation presented to jury (full extent of information presented to jury regarding

7

the felony record of the defendant)

## GOVERNMENT'S DESCRIPTION OF RELEVANT EVIDENCE

It is inherently difficult to correlate official records from different jurisdictions, typically recorded in varying formats and frequently bearing more than one indication of the convict's name and/or date of birth and other identifiers.  Nonetheless, the government believes that the criminal record and other official records combined with various records maintained by the Department of Homeland Security (INS / ICE) achieve the end of connecting the defendant in this matter to the offenses of conviction (described in the PSR) and that they do so in such a way that this court may find that the evidence permits it to deem this defendant an Armed Career Criminal.

I.    **Brief Discussion of the Evidence Linking this Defendant to the Shooting at the LAW Grill in Lawrence on July 14, 2004**

Exhibit 1 is the sworn statement of one of the intended victims, Henry Gonzalez (whose location is now unknown to the government, despite diligent efforts to locate him) before the federal grand jury in this matter.  In his statement, he told the jurors about the attempt of a man inside the LAW Grill to shoot at he and at least one of his brothers outside of the Grill (in the parking lot).[3]  The sworn testimony includes a description of how he and his brother drove directly to the police station after the shooting (to report what had occurred and seek assistance).[4]  Mr. Gonzalez then described going to the police station and participating in a photographic array and identifying, without hesitation, the man who had fired the shots at he and his brother.[5]

_____

[3]Grand Jury Transcript, p. 16.

[4]Grand Jury Transcript, p. 18.

[5]Grand Jury Transcript, p. 20-21.

Attached as Exhibit 2 is the Police Incident Report from that day, which briefly summarizes the full substance found in Exhibit 26 (the full Suppression Hearing Transcript from March 28, 2005).  Exhibits 3 and 4 include the photo array identifications by Henry and Edward Gonzalez (and the police descriptions of the identifications).  In the identifications, both intended victims immediately identified the defendant as the shooter.

Exhibit 5 is a partial (English translated) transcript of the 911 phone call and other police radio traffic (presented at the Suppression Hearing).[6]  The transcript supports the version of events relayed to police by the sworn grand jury testimony of Henry Gonzalez.  The transcript reveals that the police then located a BMW being driven by the defendant, which plates matched those provided to the police as the car being driven by the shooter.  No individual other than the defendant was in the car and the firearm, bearing three live rounds of ammunition, was found in the car.  Defendant subsequently stated to the police (after the police reported the gun having been stolen) that he had bought the firearm on the street for $300.00.[7]

Exhibit 6 includes items found in the defendant's wallet which indicate that he was then using the name "Jose A. Rivera."

Exhibit 7 (provided to counsel at various points prior to trial) is the registration to that BMW vehicle which was found in the car being driven by the defendant and which clearly - lawfully - associates the defendant with the car (see defendant's objection no. 3 to the PSR).

Exhibit 26 (full transcript of the Suppression Hearing held on March 28, 2005) explores in great detail, among four sworn Lawrence Police officers, the events of July 14, 2004 and

---

[6]The actual recording of the 911 call and related radio traffic is available should the court wish to hear it.

[7]See Exh. 2, page 3 (of 4).

which events led directly from the shooting at the LAW Grill to the apprehension of this

defendant.  Contrary to what was suggested by defendant's counsel at the previous sentencing

hearing, the testimony of the four officers clearly describes the shooting and the reaction of the

police officers to the shooting and resultant apprehension of this defendant.

## II.    Brief Discussion of the Evidence Linking this Defendant to the Conviction Identified in Paragraph 42 of the PSR

Exhibit 8 is the Indictment of the Commonwealth's grand jury which indicted "Santo

Romero" in Docket No. 076210-211 in Suffolk Superior Court for Cocaine Distribution.  Exhibit

9 then connects the Indictment to the guilty plea (page 1) and sentencing to 4-6 years on June 5,

1990 (page 4 or Bates Stamp No. 139), which orders the defendant be incarcerated at MCI Cedar

Junction.

Exhibit 10 then shows the defendant's image at MCI Walpole on June 7, 1990 with

inmate number "W-48544."

Exhibits 11 and 12 then place the defendant, bearing INS Alien Number A29 710 069

under the name "Santo Rodolfo Romero Villar," at MCI Concord on June 20, 1990.  The sworn

affidavit (Exhibit 11) of Special Agent George Dorsett indicates that he interviewed an inmate at

MCI Concord who had been born in the Dominican Republic on April 7, 1965 (for comparison,

see Dominican Passport bearing the image of this defendant and containing the same name and

date and place of birth [Exhibit 25] and the Application for Adjustment of Status which also

bears a contemporary image of this defendant and containing the same name and date and place

of birth [Exhibit 24]).

Exhibit 12 is the INS' "Record of Deportable Alien" which records similar findings

including that the subject was being detained pursuant to a conviction from Suffolk Superior

Court bearing docket no. 076210 (for Poss. with the Intent to Distribute) and that he had been sentenced to 4 to 6 years of incarceration.    That INS form further lists (in the lower left corner of the document) the same inmate number ("W-48544") as that seen on Exhibit 10 (the intake image of the facility).

Exhibit 13 is a full print set obtained from "Santo Romero" at the time of release from state custody to INS on February 13, 1992 (the print card references inmate number "W-48544" and Alien No. A29 10 069 and the date of birth as 4/7/65).

Exhibit 14 is the INS photographic image of the person that it had just taken into its custody bearing the same Alien No. and date of birth - and appearing very much to be the same likeness as the defendant now before the court, albeit fourteen years prior.

Exhibit 15 is the "Warrant of Deportation" of "Santo Romero" from New York to the Dominican Republic on March 7, 1992.  It does not include a photograph, but it does include a right thumb print which was examined by the government's print expert at trial and found to be an identical match (without objection) to the same print taken by the Lawrence Police on July 14, 2004 (and which prints are associated with this defendant).

Exhibit 15 also includes the signature of "Santo Romero" - a signature very much like that found in documents associated with this defendant throughout his Alien File (which documents were admitted at trial).

III.     **Brief Discussion of the Evidence Linking this Defendant to the Conviction Identified in Paragraph 45 of the PSR**

Exhibit 16 consists of the entirety of the official court records of the Middlesex Superior Court relating to Docket No. 931090-002-004 and a defendant by the name of "Tony Diaz" and bearing the alias "Santo Romero."  These court records include a reference in the Indictment (to

11

which this defendant, "Tony Diaz," pleaded guilty) to him having been previously convicted on November 29, 1988 in Dorchester for having possessed with the intent to manufacture, distribute or dispense cocaine.  See PSR, paragraph 43 for a reference to that offense found in the defendant's criminal history, obtained from the Commonwealth of Massachusetts Systems board record.

Exhibit 16 also verifies (page 3) that Tony Diaz (a/k/a Santo Romero) pleaded guilty on April 27, 1998 to trafficking in at least 28 grams but less than 100 grams of cocaine and that he was sentenced on that day to five years and a day in MCI Cedar Junction.

## IV.    Brief Discussion of the Evidence Linking this Defendant to the Conviction Identified in Paragraph 46 of the PSR

Exhibit 17 consists of the official court records from Worcester Superior Court relating to docket no. 95-00370-01 in the matter captioned as "Commonwealth v. Jose Antonio Morales" and "Commonwealth v. Jose Rivera Morales."  In the Indictment, the defendant was charged with distribution of cocaine in Leominster, Massachusetts on January 27, 1995. On August 5, 1996, the defendant pleaded guilty to the offense and was sentenced to from 2 to 4 years of incarceration at MCI Cedar-Junction.

The official court records include a document provided at the time by INS - a sworn affidavit of "Santo Rodolfo Romero-Villar" dated 10/16/1996 (see Bates Stamp no. 098-099).  In that Affidavit associated with these court records, Romero-Villar (now bearing Alien File No. A90-567-004[8] (as found on Exhibits 11 and 12 and providing identical biographical information)

---

[8]As presented in through the sworn trial testimony of DHS Keeper of Records Joanne Sassone, this Alien Number and the previously used (Alien Number A29 710 069), were merged and represented the full INS / ICE record of the same unlawful alien, as confirmed by the testimony of the government's print expert, FBI print specialist Allison Larson, through her sworn trial testimony.

put himself on that date at MCI Concord, where the Affidavit was executed (the defendant's

signature appears, similarly, on the affidavit).

These official records also include copies of records relating to the previously discussed

1988 and 1990 drug distribution (felony) convictions. Also included in the official records is a

copy of an INS immigration detainer provided to MCI Concord with regard to inmate no.

W61076 (referring to the same Alien Number as that of this defendant). Those records further

include references to the 1988 and 1990 convictions again (at Bates Stamp No. 109). The

individual associated with the same Alien Number is the defendant, as presented through the trial

testimony of DHS Keeper of Records Joanne Sassone.

Exhibit 18 includes the Keeper of Records' (Dept. of Corrections) affidavit as it relates to

images provided to the government which reveal the image of the defendant at MCI Shirley

MED on December 18, 1996 and bearing inmate no. 61076.

Exhibit 19, similarly was provided to the government and is an Inmate Card revealing the

image of the defendant with a date of birth of 4/7/65, the name "Jose Morales" and the inmate

no. W-61076.

Exhibit 20 includes additional inmate facial images which include the same inmate

number and name as well as certification by the Records Manager that the same inmate was

released from MCI Shirley on 5/25/01 to "Immigration."

Exhibit 21 is the Department of Correction's "Certificate of Discharge" relating to the

same inmate with the same inmate number - indicating release on May 25, 2001.

Exhibit 22 is the photographic record of INS, dated May 25, 2001, and indicating Alien

No. A90 567 004 (identical alien number) and the place of apprehension as being "MCI

13

Shirley." It includes an "Order" to the Alien and the signature of the Alien - again, the identical signature "Santo Romero."

Exhibits 18 through 22 clearly reveal that Inmate No. W61076 was the defendant and that he came into INS custody after completing his period of incarceration on May 25, 2001.

Exhibit 23 is a copy of the Interstate Criminal Record search in this matter and which relates to an FBI number (573961KA1) brought up by the running of the defendant's fingerprints through the FBI's Special Processing Center (which exists to explore such records and create such print matches). Such was the testimony connecting the prints and record of the defendant at trial. That Record again reveals that the person convicted of these various offenses is one and the same individual, as found by the PreSentence Report.

Exhibit 24 includes the application of the defendant (as Santo R. Romero - note the signature's similarity to the same signature throughout) for Adjustment of Status (to be in the U.S. lawfully). The trial testimony indicated that the prints submitted at the time of that application (in or about 1989) matched those of the defendant taken by the Lawrence Police on July 14, 2004. That application includes the physical description of the defendant and a date of birth of April 7, 1965 - further supporting the previous convictions as described as occurring at or around the same time (1988 and 1990).

Going essentially to the same point, Exhibit 25 purports to be the Dominican passport of "Santo Rodolfo Romero Villar" and bears the image of the defendant and the same date of birth. This apparently authentic passport (found in the Alien File - the original is available to the court upon request) shows the use of the same or similar information by the convicted felon from 1988 through 1996) as that found in his reasonably trustworthy or reliable Dominican passport.

14

Exhibit 26, again, is the full transcript of the Suppression Hearing and reveals the sworn testimony of four Lawrence Police officers and the involvement of the defendant in the shooting at the LAW Grill on July 14, 2004.

Exhibit 27 is a copy of the actual "stipulation" regarding the full breadth of evidence allowed at trial regarding the defendant's criminal history as a felon. It is presented primarily to refute the assertion by defense counsel at the previous sentencing hearing that the government was, more or less, presenting the same evidence to the court now as that which the jury had previously rejected.

## CONCLUSION

Courts in this district generally have relied on systems checks (among other substantial findings) in the determination of a defendant's criminal history. Here, the official records checks correlate this defendant through his fingerprints to his multiple felony convictions in the Commonwealth. It is important to note that even though prints in all of those convictions have not been found that is should not be inferred that such prints did not then originally serve as part of the basis of entry for the defendant's information into the criminal record system(s). Police have for many years routinely printed arrested persons and submitted those prints to the Commonwealth and /or the Federal Bureau of Investigation's Special Processing Center in Clarksburg, West Virginia. By so doing (through this and other areas of data sharing and input), criminal records of defendants have been accurately maintained and updated.

The government has conducted an exhaustive search for records and has discovered multiple indicia of reliability which correlate each of the felony convictions (essential to find that the defendant is an Armed Career Criminal) with the defendant in this matter. Those include

15

images provided by prisons, fingerprints, names combined with inmate numbers and alien numbers, places and dates of birth and locations at which the defendant was found (as evidenced by sworn statements, on occasion, and official records on others).

In conclusion, the government respectfully submits to this court that the Probation Office's PreSentence Report is quite accurate as it pertains to the defendant's criminal history and that this court may easily find, by a preponderance of the evidence, that this defendant had engaged in a shooting on July 14, 2004 (with the firearm which the trial jury found him to have unlawfully possessed) and that he is, in fact, an Armed Career Criminal.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ Paul R. Moore
Paul R. Moore
Assistant U.S. Attorney

May 17, 2006

## CERTIFICATE OF SERVICE TO COUNSEL AND U.S. PROBATION

I hereby certify that a true copy of the above document was served upon the attorney for convicted defendant Tony Diaz, Andrew M. D'Angelo, Esq., on May 17, 2006, via electronic filing (Carney & Basil, 20 Park Plaza, Suite 1405, Boston, MA 02116). A hard copy of the filing was also presented to the United States Probation Office on this day and two courtesy copies provided to the court.

/s/ Paul R. Moore
Paul R. Moore
Assistant U.S. Attorney